PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BRIAN LUMBUS, JR., ) | |
| ) | CASE NO. 1:13cv1221 |
| Plaintiff, ) | |
| ) | JUDGE BENITA Y. PEARSON |
| v. ) | |
| ) | |
| CUYAHOGA COUNTY SHERIFF, *et al.* ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| Defendants. | [Resolving ECF No. 1] |

Before the Court is *pro se* Plaintiff Brian Lumbus's *in forma pauperis* civil rights Complaint filed pursuant to 42 U.S.C. §1983 against the Cuyahoga County Sheriff, the Cuyahoga County Warden, Medical Supervisor Mr. Harris, Mr. Kaleta, Mr. Kwapenski, Corporal Metz, Mr. Little, Mr. Hamilton and Ms. Nadine O. (ECF No. 1) Plaintiff, who was incarcerated at Cuyahoga County Jail ("county jail") at the time he filed this Complaint, alleges the defendants denied him adequate medical treatment, sexually harassed him and profiled him based on race.[1] (ECF No. 1 at 7.) He seeks $1,000,000.00 in damages.

---

[1] Plaintiff is currently incarcerated at Mansfield Correctional Institution.

(1:13cv1221)

## I. Background

Plaintiff was being held at the county jail in April 2013 when he complained of chest pains.[2] Prison officials transported him to the Emergency Room at Lutheran Hospital. After examining the Plaintiff, the treating physician determined his potassium levels were below normal. The physician prescribed medication for the condition, which Plaintiff received and was released and escorted back to the county jail by the Sheriff. Five days later, he complained again about chest pains and was returned to the hospital where an EKG was performed. Plaintiff's vital signs were checked, lab work was performed and he was returned to the county jail.

Four days after his testing at the hospital, Plaintiff was called to the county jail's medical unit for an examination by the department head, Dr. Cowen. Plaintiff claims Dr. Cowen expressed concern that his triglyceride level was dangerously high. As a result, the doctor prescribed "medication for the situation." Upon further examination, Dr. Cowen advised Plaintiff that he had a hole in his heart "that was leaking from the valve and I was allergenic [sic] to something and my asthma was very bad." (Doc. No. 1 at 5.) The physician provided Plaintiff two inhalers for his asthma, medication for his heart condition and advised him to see a specialist

---

[2]Initially, it appeared Plaintiff filed this action as a pre-trial detainee. A closer examination of the Complaint, as well as the county's public records, reveal Plaintiff pleaded guilty to engaging in a pattern of corrupt activity, grand theft and identity fraud on August 13, 2011. *See Ohio v. Lumbus*, No. CR-11-556136-A (Cuyahoga County Ct. Com. Pl.)(Butler, J.) On November 27, 2012, Judge Annette Butler imposed concurrent sentences of five years in prison on Count One, twelve months on Count Four and twelve months on Count Twelve. After that date, however, Plaintiff was held in county jail to appear for trial on charges stemming from a 2012 indictment for nonsupport of dependents. *See Ohio v. Lumbus*, No. CR-12-12-559530-A (Cuyahoga County Ct. Com. Pl. filed Feb. 16, 2012)(Friedland, J.)

(1:13cv1221)

at an "outside hospital." Plaintiff claims he "never went to get look[ed] at" but was told it "cost a lot of money for them to send me out day after day." *Id.* He does state, however, that he continued to follow the doctor's orders, "going to medical to only be not help[ed]." *Id.*

After continuing to complain of chest pains, Plaintiff went to the county jail's medical department on May 8, 2013. Once there, he alleges the Charge Nurse, Mr. Harris, sexually harassed him by making a "flirtations [sic] comment." Upset by the comment, Plaintiff yelled for Corporal Metz who immediately entered the room asking for clarification. When Plaintiff repeated Mr. Harris's alleged remark, he claims the nurse told the corporal Plaintiff did not want to be examined by him, "so I was kick[ed]out of medical." When Plaintiff asked Corporal Metz to feel his heart beat, the corporal allegedly threw Plaintiff against the wall, handcuffed him and threatened bodily harm if he returned. Plaintiff states he asked his family to telephone the Sheriff and the warden, but "nothing happened."

On May 20, 2013, Plaintiff states he passed out and awoke with chest pains. He returned to the medical department to seek help. Nurse Nadine O allegedly treated him with a nasty attitude and used "racial [unintelligible word] to me such as you black kid etc." She advised him he would be charged $10.00 for treatment. When Plaintiff agreed to make the payment, however, Mr. Harris allegedly entered the room and advised Ms. O to "kick" him out. Plaintiff states he was escorted away from the department without being seen by a physician.

Plaintiff now argues he was denied medical treatment and "subjected to medical misconduct." (Doc. No. 1 at 5.) While he claims he filed a statement with the Sheriff, "nothing

3

(1:13cv1221)

ever happened." He claims he is still awaiting a ruling on an appeal bond motion.[3] In addition, Plaintiff is seeking a copy of his medical file for his attorney to present to the "appeal judge to hopefully get my bond faster." *Id.*

## II. Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to section 1915(e)..

## III. Law and Analysis

To state a civil rights claim under 42 U.S.C. §1983, a plaintiff must plead and prove that the defendants, acting under color of state law, deprived him of a right secured by the Constitution and laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 does not create any substantive rights by itself; rather, it is the vehicle through which a claimant may seek

---

[3]The motion was denied before Plaintiff filed this action. On May 8, 2013, Plaintiff's attorney filed a Motion for Bond and to Suspend Further Execution of Sentence Pending Appeal in the Court of Common Pleas. Less than three weeks later, the court denied the Motion on May 21, 2013. *See Lumbus*, No. CR-11-556136-A  (J.E. of 5/21/12). The action before this Court was filed in the month that followed.

4

(1:13cv1221)

redress for deprivations of rights established in the Constitution or federal laws. *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979). The statute can only apply if there is a deprivation of a constitutional right. *See e.g., Paul v. Davis*, 424 U.S. 693, 699-701(1976); *Baker*, 443 U.S. at 146-47.

Plaintiff argues he was denied adequate medical care. The right to adequate medical care is guaranteed to federal prisoners by the Cruel and Unusual Punishment Clause of the Eighth Amendment, and is made applicable to state prisoners by the Due Process Clause of the Fourteenth Amendment. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir.2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976)); *see DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 198 (1989); *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir.2003). A prisoner's right to adequate medical care "is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." *Johnson*, 398 F.3d at 874 (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir.2001), *cert. denied*, 537 U.S. 817 (2002)).

A difference in opinion between a prisoner and the medical staff over the proper course of treatment does not state a Constitutional violation. *Estelle*, 429 U.S. at 107. When a prisoner has received some medical attention and his dispute involves the adequacy of that treatment, a federal court is reluctant to second guess a medical judgment. *See Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir.1976). If a prison official has been alerted to a prisoner's serious medical need, however, he or she is obligated to offer medical care to that prisoner. *See Danese v. Asman*, 875 F.2d 1239, 1244 (6th Cir.1989), *cert. denied*, 494 U.S. 1027 (1990).

To determine whether prison officials have met their obligation requires a two-pronged

(1:13cv1221)

analysis, one objective and one subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is "sufficiently serious." *Id.* To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk. *Id.* A prison official may be held liable for denying an inmate humane conditions of confinement only if he knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. A prison official must exhibit more than lack of due care for a prisoner's health or safety before an Eighth Amendment violation will be found. *Id.* at 835; *see Whitley v. Albers*, 475 U.S. 312, 319 (1986). Moreover, liability will not be found where a prison official actually knew of a substantial risk of harm to an inmate if he responded reasonably to the risk, even if the harm ultimately was not averted. *Farmer*, 511 U.S. at 844. Under these standards, Plaintiff has failed to establish an Eighth Amendment claim.

      The Complaint begins with Plaintiff's physical examination at a local hospital after he complained of chest pains. He was treated for the cause and symptoms from which he was suffering. In a follow-up examination, an EKG was performed and Plaintiff learned he had a "hole in his heart." Medication was prescribed for his heart condition, as well as Plaintiff's asthma. Although the county's physician suggested Plaintiff "see a specialist at an outside hospital," there is no suggestion of urgency or the need for immediate treatment. Therefore, even assuming Plaintiff's medical needs are objectively serious, he was routinely examined and

6

(1:13cv1221)

received on-going medication from the defendants. The defendants did not interfere with the medication prescribed to treat Plaintiff's condition. Plaintiff admits he visited the nurse on an almost daily basis after his two physical evaluations at the hospital.[4] While his allegations suggest that the cost of paying a specialist to treat his leaking heart valve may have been more than the prison could afford, there are no allegations that this decision reflected the defendants' conscious disregard for a substantial risk of serious harm. *See Farmer*, 511 U.S. at 837. Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley*, 475 U.S. at 319.

With regard to his sexual harassment and racial profiling claims, Plaintiff has not alleged facts that would support a federal claim. The Court notes that between March 14, 2013 and April 10, 2013, Plaintiff filed eight *pro se* motions in the Court of Common Pleas claiming ineffective assistance of counsel and prosecutorial misconduct, and requesting an evidentiary hearing, disclosure of evidence and a demand to remove counsel. On May 13, 2013, Plaintiff requested a pretrial conference extension to continue additional discovery. This time period during which these motions were filed overlaps the time period during which Plaintiff now claims that he was denied medical treatment. None of his motions in the Court of Common Pleas, however, mentions his medical condition or that he was being sexually harassed or otherwise discriminated against in the county jail.

---

[4]On October 29, 2012, Judge Carolyn Friedland determined Plaintiff should be referred to the court psychiatric clinic in accordance with Ohio Revised Code §§2945.371 and 2947.06(B). *See Lumbus*, No. CR12-559530 (J.E. of 11/1/12).

(1:13cv1221)

### IV. Conclusion

Based on the foregoing, the Complaint is dismissed pursuant to 28 U.S.C. § 1915(e). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be taken in good faith.[5]

IT IS SO ORDERED.

 November 27, 2013   /s/ Benita Y. Pearson
Date   Benita Y. Pearson
   United States District Judge

---

[5] 28 U.S.C. § 1915(a)(3) provides: "An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."